UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

SHERRY L. DUFFIE,

         Plaintiff,            Case No.  14-14148

  -vs-                            Ann Arbor, Michigan

THE MICHIGAN GROUP, INC. -
LIVINGSTON d/b/a RE/MAX
PLATINUM, a Michigan corporation,     January 6, 2016

         Defendant.
_____/

TRANSCRIPT OF MOTIONS IN LIMINE

BEFORE THE HONORABLE JUDITH E. LEVY

UNITED STATES DISTRICT COURT JUDGE

Appearances:

For the Plaintiff:                 Elisabeth Gusfa (P77273)
                                      Brian Farrar (P79404)

For the Defendant:               William E.  Pilchak (P29545)
                                      Robert N. Dare (P79207)

Proceedings taken by mechanical stenography, transcript produced by computer-aided transcription

**JANICE COLEMAN, CSR 1095, RPR
OFFICIAL FEDERAL COURT REPORTER
(313) 964-5066**

| | |
|---|---|
| 1 | Ann Arbor, Michigan |
| 2 | Wednesday, January 6, 2016 |
| 3 | (At about 4:20 p.m.) |
| 4 | - - - - |
| 5 | (Call to Order of the Court) |

6  THE COURT: We are now on the record in Sherry L. Duffie versus The
7  Michigan Group Inc. - Livingston doing business as Re/Max Platinum, a Michigan
8  Corporation, case 14-14148, and this is the date and time for Defendant's Motions in
9  Limine. Can I have appearances for Plaintiff and then Defendant?
10  MS. GUSFA: Yes. This is Elisabeth Gusfa appearing for the Plaintiff
11  and my co-counsel --
12  MR. FARRAR: Brian Farrar also for Plaintiff.
13  THE COURT: Okay, thank you.
14  MR. PILCHAK: Your Honor, William E. Pilchak for the Defendant.
15  MR. DARE: Robert Dare for the Defendant.
16  THE COURT: Okay, and welcome to everybody. We just spent a good
17  deal of time upstairs together in chambers working on the Final Pretrial Order in this
18  case and seeing whether this is a case that might settle, and we I think came to the
19  conclusion that the case will proceed and trial will start at 8:30 a.m. on Tuesday,
20  January 19th.
21  What I want to do at this time is address the Motions in Limine, but before
22  doing that I want to make sure that the Defendant has all of its Counsel file
23  appearances on the record -- on the docket immediately because there are two
24  lawyers I think -- at least two are not -- have not filed appearances, so we need to
25  have that happen.

1  I've also had a chance to look at the proposed voir dire and so maybe I'll just
2  quickly go through that in terms of a few questions that I will be covering that are in
3  both of your lists of questions and a few that should not be asked.
4  But first let me tell you what the general -- I told you I'll have a sheet of paper
5  on each of the chairs in the jury box and it will -- I just pulled it up on the computer.  I'll
6  ask them to -- they'll all be sworn to tell the truth and there will be all that sort of
7  preamble, to tell us their full name, their age, the county in which they reside, where
8  they grew up, their education, their present occupation, the name of your employer
9  and then length of your employment; if the person is retired, the name of the former
10  employer and the length of employment; whether they have a spouse or a partner
11  with whom they live, that person's name, occupation and employer; if they have
12  children, their ages, whether they reside with the juror and if applicable, their
13  occupations and memberships in any clubs or organizations, and I think actually the
14  one that I modified from this says -- asks them if there are any particular news outlets
15  that they use to obtain news.  So those are general questions that everyone will stand
16  up and we'll just go right on through all the 14 jurors with those questions to begin that
17  process.
18  In terms of the Defendant's proposed voir dire I mentioned earlier off the record
19  when we were in chambers that there was a question about whether there were any
20  particular positive or negative feelings about the Defendant.  I definitely will ask jurors
21  as a preliminary matter whether they have listed or sold or purchased real estate
22  through the Defendant.  I think that's very relevant.  I will not ask them in front of other
23  jurors whether there was a positive or negative feeling. They may go head and talk
24  about that a little bit, but I'll try to limit that in the event that someone could taint the
25  rest of the jury pool with some experience that did not relate to the Fair Labor

1  Standards Act.  So I think it is relevant to ask the questions about whether any of the
2  jurors have worked in the real estate business and that sort of thing.
3      The Question Number Six that the Defense has proposed:  Has any
4  prospective juror developed the belief that any former employer paid them improperly
5  or didn't pay them for certain work they performed?  I don't -- I will not ask that and I
6  ask that you not ask that in this form, but I'll ask a general -- a more general question.
7  There will  definitely be a question, have you ever filed a complaint of any sort against
8  an employer, whether it's a  -- it will be a general thing.  Is it a union grievance, an
9  EEOC or anything and we'll find out -- we'll get that general answer instead of
10 breaking it down to basically did you file this case that we're here for against your
11 employer and we'll find out through a more general set of questions.
12     On the question of -- number 13 I think just goes into too much detail about
13 whether somebody's worked for a different employer and wants to hold this employer
14 to that employer's standards.  I think I understand what you're getting at, but I think it's
15 sort of arguing your case a little bit, just sort of beginning to introduce to the Jury what
16 you will introduce through your opening, through your evidence and through closing,
17 which is that these are the standards that apply to this employer and this is what your
18 duty is and I'll be asking them can you follow the law, can you follow the jury
19 instructions whether you agree with them or not.  So I think that just gets into the
20 weeds too much of essentially what your argument is.
21     Has any prospective juror been a part of any organization that advocates for
22 the rights of employees?  That will be gotten at in the initial questioning of whether
23 they belong to any organizations.
24     And Question 14 about Mr. DeKroub going to Florida I think is not relevant to --
25 too much in the details of this case and it's beginning I think to try to argue that Mr.

1  DeKroub is a sympathetic person or something like that.  So I can't see anything that
2  would help us understand if a juror is qualified for the case.
3      So there's one more.  Number 16:  At this point does any prospective juror
4  have any inclination as to which way they would decide this case?  I'm worried about
5  asking that because I don't want a juror to say yes, I think employers always hurt the
6  little guy or I don't want someone to -- but I think we'll be able to get at that because
7  we will detect somebody up here who is biased for or against Plaintiff or Defendant
8  and I'll follow-up and say can you follow the law despite your personal feelings?  Then
9  we'll be able to argue and discuss at side bar whether that's a cause -- we should
10 eliminate that juror for cause.
11     Number 17 which is that the Defendant ends up entrusting important decisions
12 to people, I think that's true for both Plaintiff and Defendant.  This is an important case
13 to both sides, and that -- I'll get at that as -- in the general questioning about is there
14 anything that you believe we should know that we don't know.  I'll ask that general
15 question at the end of the -- of my own questioning before I turn it over to you, but I
16 won't say just that the Defendant is entrusting an important decision to the Jury.
17     So generally those -- having just skimmed them, those are the ones that I had
18 concern about.  Okay.  So --
19          MR. PILCHAK:  Your Honor, may I just make a couple points?  With
20 regard to Number 12 and your asking about when you do ask organizations, I'm not a
21 hundred percent sure that your average juror is a member of a union.  Would they say
22 yes to that?  And will your question be broad enough so that it will capture who is part
23 of a union?
24          THE COURT:  I think we'll get at that because you'll hear I worked for
25 Ford Motor Company in assembly and then you'll know they're a member of a union,

1 and let's say I worked at the University of Michigan Hospital, you won't know. There's
2 eight unions there, and so I think that's something you could ask in follow-up if you
3 think that it's going to go to the qualifications of a -- because then in order to figure out
4 -- if you're thinking well, that perhaps somebody who's a member of a union would
5 take a stronger stance on enforcement of the Fair Labor Standards Act, then you'd
6 have to go is it a closed shop or an open shop and they're not going to necessarily
7 know.
8 MR. PILCHAK: With respect to that particular issue and specifically with
9 respect to the question in item six, with all due respect I'm going to be exercising
10 peremptory challenges and I know that there are different types of union members,
11 but some union members are very, very assertive of employee rights and have a
12 tendency to believe that employers tend to be wrong and I think I'm entitled to find out
13 about those people and use my peremptories on them.
14 THE COURT: Okay. Why don't we do this? I'll get started with the
15 general voir dire that we've already discussed. If you think that you simply don't have
16 enough of a basis to exercise your peremptories, we'll have a side bar and we'll
17 discuss asking the union question. I think we'll get at it. I think we'll actually get quite
18 a bit of information about the prospective jurors. So you're free to bring it up. So
19 these are all without prejudice to saying hey, wait a minute. This person sort of said
20 something very relevant to one of these questions. I'd like to be able to ask it.
21 MR. PILCHAK: Very good.
22 THE COURT: Okay. And I'll be much more generous I think than you
23 might anticipate in terms of trying to sort out who's here, so if I'm going to make a
24 mistake, I'll make the mistake in the direction of permitting questions as opposed to
25 prohibiting them.

1       So was there anything further from Plaintiff's Counsel?

2       MS. GUSFA: No, Your Honor.

3       THE COURT: So let's go to the Motions in Limine, and the first issue in

4  Defendant's Motion is this issue of the admissibility of sales data. I see in the

5  response by Plaintiffs that you will agree not to introduce evidence of Defendant's

6  financial condition if Defendant agrees not to compare Duffie to Thompson or rely on

7  the Great Recession as a defense. So I just want to hear back from Defendant.

8       MR. PILCHAK: Your Honor, my Motions narrower than that response.

9  Absolutely the Defense is going to introduce, especially with regard to the Statute of

10  Limitations issue now being back in 2008 -- or January of 2009. All of these events

11  started during the economic collapse, so we are going to get into that.

12      My point is this. At Mr. DeKroub's deposition, they -- the Plaintiff confronted

13  him with a Crains Book of List list that reports the amount of property that they sell

14  and that I don't believe is relevant at all.

15      THE COURT: I agree. That's not relevant because the property that

16  they sell is not the income and I think Plaintiff understands that.

17      MR. PILCHAK: And actually Mr. Farrar and I spoke in the hall and they

18  haven't sought to introduce the list that they presented to Mr. DeKroub, and so I don't

19  believe that that's going to be an issue.

20      MR. FARRAR: If I may just be heard on that? We don't intend to

21  introduce this Crains' article. It's not on our exhibit list. With respect to more general

22  financial information, we do think that that is fair to at least explore if Defendants

23  making the argument that they couldn't afford to pay Miss Duffie or that there was

24  other financial strain on the company. Any evidence that's presented -- it seemed like

25  from what I could tell from their Motion in Limine there was a concern about misstating

1  certain facts or something along those lines, and I think that that concern would be
2  alleviated in a courtroom where any questioning of Mr. DeKroub or anyone else about
3  the company's finances, they'll be able to explain and provide context to the Jury what
4  it means if someone's gross revenue is a certain amount.  That doesn't mean gross
5  profit.  I think we all -- or net profit -- we all understand that.  So I don't think that
6  there's any need to exclude it.  It will certainly be explained, but if there's concern
7  about a particular article or anything like that being introduced, that concern should be
8  alleviated.
9              MR. PILCHAK: My only point is this.  I don't want my opponent
10 misrepresenting to the Jury that this is a 307 million dollar company.
11             THE COURT: That won't happen.
12             MR. PILCHAK: Let me just -- because some of these issues relate to
13 each other.  In a moment I'm going to argue why we should never have to justify why
14 Kandis Thompson's salary was 67-five at the time of the merger set before the
15 economic collapse and why Miss Duffie came over as the chief financial person of the
16 company that came and merged at 52 and why both of them were continued, because
17 I don't believe there's any probative value of Ms. Duffie's salary versus Ms.
18 Thompson's salary and certainly not any comparison between her and the
19 revenue-generating people like Miss Steudle or the other Sales Managers.
20             THE COURT:  Okay, let me go back though to the gross sales versus
21 actual financial condition of the Defendant and to the -- what will be permitted is if the
22 defense is that there was an economic collapse or a collapse in the housing market
23 and our company was financially hurting and so that is why this salary is what it is,
24 then I think it is absolutely relevant for Plaintiff to be able to say this is what the
25 financial condition of this Defendant was, so that will be permitted.

1  If Plaintiff is representing that Crains Business Detroit Book of Lists will not be
2  the way that they go about that and gross sales isn't the determining factor of what
3  the financial status is of the Defendant so gross sales can't be used for that, if they
4  can present the formula for what the actual income is from the gross sales, perhaps it
5  could be.
6  So the Motion to the extent is sort of granted in part and denied in part with
7  respect to evidence of gross revenue can only be used to the extent that Defendant is
8  claiming they were financially unable to pay or to change salaries and it will only be
9  used if it's the actual financial status of the Defendant, not if it's the gross sales.
10  Okay. So let's go on to the -- whether Plaintiff should be precluded from
11  introducing evidence of salary of other Managers.
12  MR. PILCHAK: And, Your Honor, with -- does the Court want argument
13  from me or does the Court want to --
14  THE COURT: Go head.
15  MR. PILCHAK: Okay. I do want to make it clear that to a large extent
16  the only reason we would feel compelled to have to go into the economic condition of
17  the company after collapse is if we have to defend Ms. Duffie's salary versus other
18  people, so that Motion relates to this.
19  THE COURT: I see. And as I've read the briefs and the law, I think that
20  that is relevant to -- that other Manager's salaries -- if you're saying these are the
21  Managers and they're saying well, she was not a Manager and one way we're going
22  to be able to show that to the Jury is that she was paid $12,000 or $15,000 less per
23  year, then I think it's very probative.
24  MR. PILCHAK: Okay. And I think we can differ on that and I anticipated
25  the Court would rule that way, but if the Court would just allow me to make a bit more

1  of a record than I have with my brief.
2           THE COURT: Please.
3           MR. PILCHAK: Your Honor, you understand of course that in this case
4  the Plaintiff admits that Steudle was encouraging her to ask for a pay increase and
5  that she refused to do that, refused to --
6           THE COURT: (Interjecting) Well, I read her deposition and she had
7  various reasons for that, but I think that the standard -- I have not read a single Fair
8  Labor Standards case where somebody doesn't get overtime pay, time and a half
9  because they didn't ask for it. It's not their obligation, duty or burden to ask for it.
10          MR. PILCHAK: You're mixing apples and oranges, Your Honor, because
11 the point is she's saying that I should have been paid the same salary as Kandis. She
12 assumed the position in the economic collapse when General Motors and Chrysler
13 were on the verge of going bankrupt.
14          THE COURT: Yeah.
15          MR. PILCHAK: And then she was encouraged to speak to the head man
16 and get her salary to where -- up above where it was and she refused to do so. So I
17 mean I just think that in the context of everything, the relative compensation between
18 Kandis and -- Kandis Thompson and the Plaintiff is irrelevant and it's not for a Jury to
19 decide whether she should have been paid more in salary.
20          THE COURT: No, it certainly isn't. No, I understand your argument. I
21 beg to differ with you about the apples and oranges. I think I understand that you're
22 arguing that she shouldn't be permitted to say I was not a Manager because I wasn't
23 paid like Managers when she failed to be asked to be paid like a Manager; I think I
24 understand that, but I have not read anywhere where it's the employee's burden to
25 say pay me like a Manager if I am a Manager. So that evidence will be permitted.

|   |   |
|---|---|
| 1 | Now the evidence about Plaintiff's separation, I don't know if that is next. Is |
| 2 | that sort -- |
| 3 | MR. PILCHAK: It is. |
| 4 | THE COURT: From employment. I tend to agree that it is certainly not |
| 5 | evidence if she said I'm leaving here because you're over-working me and you're |
| 6 | working me on weekends, so I'm resigning. I don't think that's evidence that she |
| 7 | worked on weekends. It's evidence that she said that to him or that sort of thing. I |
| 8 | think the Jury needs to know that the employment ended because otherwise they'll be |
| 9 | calculating damages beyond when the employment ended. |
| 10 | MR. PILCHAK: We have a stipulated fact that it ended on March 17th I |
| 11 | believe, 2014 and I don't believe that there's any need to characterize why it ended. |
| 12 | It's not probative of anything in this case. It will turn this case from a wage hour case |
| 13 | into a wrongful discharge case and that's a whole other trial. |
| 14 | THE COURT: See, I don't understand. See, at this point I think you're |
| 15 | correct, but I want to reserve ruling on that until we're at that point in the trial for the |
| 16 | following reason, which is that if I understood her testimony about her reasons for |
| 17 | resigning, I thought that your client resigned. |
| 18 | MS. GUSFA: No. She -- it's our position that Ms. Duffie was |
| 19 | terminated, but the reason that we feel some of the circumstances surrounding that |
| 20 | termination should come in is because she -- as she testified at her deposition -- she |
| 21 | during that timeframe talked about being over-worked. |
| 22 | THE COURT: Right. |
| 23 | MS. GUSFA: And things of that nature which I won't go into because it's |
| 24 | already in the brief. |
| 25 | THE COURT: Yeah. |

1   MS. GUSFA: But that is why we feel that this evidence is relevant and
2   should be admissible.
3   MR. PILCHAK:  Even if she resigned because she felt it was
4   over-worked, that does not have a tendency to prove any facts in issue.  It's irrelevant.
5   It's prejudicial.  It makes us defend a wrongful discharge claim.
6   THE COURT: Yeah, and the thing is to me, Miss Gusfa, is that being
7   over-worked is not a part of the Fair Labor Standards Act.  You can be over-worked in
8   a 40-hour work week and feel like you can't catch your breath.  You're going crazy,
9   things are coming at you, but that doesn't warrant overtime because it's in 40 hours.
10  So being over-worked is just not an element of your case and I think it will come --
11  your client will certainly testify I was busy everyday, I took lunch at -- whatever it is -- I
12  took lunch at my desk, I never answered a phone call or texted or something.  But
13  simply being over-worked doesn't make a fact that's an element in this case more or
14  less likely to be true.
15  So what I want to do with that part of Defendant's Motion is grant it without
16  prejudice to the potential that it could become relevant.  I mean if somebody for the
17  Defendant comes here and testifies that Ms. Duffie was a slacker, she didn't -- she
18  barely pulled her weight, then she can say -- but you can have rebuttal testimony
19  potentially that she was so over-worked that she said the following or something like
20  that.
21  MS. GUSFA: Right.  Just one point I'd like to clarify.
22  THE COURT: Okay.
23  MS. GUSFA: I believe the testimony that we had in mind was that
24  DeKroub called her on the weekends, that testimony which might go to wilfulness and
25  also the number of hours that she's working, which the Jury will have to determine is

1   one of the facts in the case.  So --
2           THE COURT:  (Interjecting) I understand that, but she can still testify to I
3   worked on the weekends, Mr. DeKroub called me on the weekends on a regular
4   basis, and that's much more probative than her saying in this resignation/firing
5   situation I said I'm tired of your phone calls on the weekend.
6           MS. GUSFA: I understand.
7           THE COURT: So -- okay.  So is that the conclusion?
8           MR. PILCHAK: Your Honor, there are actually two more, but they
9   devolve from each other.  May I create a record 'cause we talked about it in chambers
10  --
11          THE COURT:  (Interjecting)  You certainly can.
12          MR. PILCHAK:  -- on the Statute of Limitations aspect.  I had asked that
13  the Court bar evidence of pay practices prior to the Statute of Limitations and of
14  course when we argued the Summary Judgment Motion, the Court took the Motion
15  with regard to unjust enrichment under advisement and that Opinion came out I
16  believe two days ago and the Court has declined to dismiss the unjust enrichment
17  case which of course moves the Statute of Limitations back.  But let me take this
18  opportunity to just make this observation.
19      The Court has correctly observed that recovery under unjust enrichment is
20  precluded by the existence of a legal remedy and you cited the *Kingsley*
21  *Association versus Moll PlastiCrafters* case. The Plaintiff alleges that in her jury
22  instructions that she's filed with the Court today, and the Plaintiff has indicated that
23  the benefit Defendant received was the work she performed in excess of 40 hours per
24  week, so patently this Plaintiff had the legal remedy under the Fair Labor Standards
25  Act to seek compensation over 40 hours per week, and if for some reason she didn't

1  qualify under the Fair Labor Standards Act in Michigan, Minimum Wage Act and
2  Payment of Wages and Fringe Benefit Act provide the exact same recovery.  And so
3  the Court is saying that Plaintiff had a legal remedy, bypassed that legal remedy and
4  now can collect compensation for over 40 hours under unjust enrichment case --
5  under unjust enrichment.
6  　　　　　THE COURT: Right.
7  　　　　　MR. PILCHAK: That ruling in essence I believe is contrary to the
8  doctrine that if you had a legal remedy you were required to use it, and it forces us --
9  there's the only way for us to defend her unjust enrichment case is by now arguing
10 that the Fair Labor Standards Act exemptions beyond the Statute of Limitations, and
11 so basically what that ruling does is place -- is have us trying the Fair Labor
12 Standards Act case beyond the Statute of Limitations and after documents have
13 disappeared, after memories have faded beyond the two or three years that Congress
14 has said should be the Statute of Limitations.
15 　　So I just -- it puts us in a catch-22 where we will be trying a Fair Labor
16 Standards Act case beyond the Statute of Limitations as a result of the ruling.  I
17 believe the ruling is incorrect.  I'd ask the Court to revisit that.
18 　　　　　THE COURT: Well, I appreciate what you've said and I did hear you on
19 that earlier when we were off the record and guaranteed you an opportunity to put it
20 on the record.  I have the Court's Opinion in front of me, and I am not prepared to
21 revisit it.  I don't think it's warranted at this point.  I think that issue is whether -- with
22 the unjust enrichment is not whether she had a remedy at some earlier time if she had
23 filed, but whether she had a remedy at that time that she filed this suit and at that time
24 she did not have a remedy going back to that period of time.
25 　　That said, there's nothing about the evidence that would come in for the unjust

1   enrichment case that I think prejudices the Defendant in its Fair Labor Standards Act
2   defense.  I think it's absolutely common place and required and warranted that
3   Plaintiff in a Fair Labor Standards case is going to say I was hired on this day doing
4   these duties. I evolved to do -- there was a merger.  This is what I did after the
5   merger, and at the time that I wasn't paid the overtime under the Fair Labor Standards
6   Act this is what I was doing.  So I don't think there's anything about that period -- if
7   you are right legally and you may be right legally that it's whether she ever had a legal
8   remedy and failed to exercise it and maybe that is the case, but at this point we'll go
9   forward assuming that it's not.  I'll continue to consider it and all of that, but I want to
10  be perfectly clear that there's no evidence in this case that would be precluded if there
11  was no unjust enrichment case.
12              MR. PILCHAK: Again for the record, to defend against the unjust
13  enrichment we have to prove that she's exempt and that evidence is old evidence.
14  Recollections have faded.  People don't remember things.  We know documents have
15  disappeared.  I'm sure it's going to come up at trial about certain documents have
16  disappeared because Plaintiff contends, Plaintiff contends that she turned in time
17  sheets for a certain period of time and some time sheets have not been located,
18  et cetera.  So we would have the burden of proving that she was salaried exempt from
19  2009, 2010 and beyond the Statute of Limitations and frankly because the evidence is
20  so old and because the memories have faded, we're in a more vulnerable position
21  because of that.
22              THE COURT: Okay.  Well, thank you and I think you've set forth a
23  record.  Is there something Plaintiffs or Plaintiff would like to say?
24              MS. GUSFA: Just one correction.  Under unjust enrichment there is no
25  legal requirement that the Defendant needs to prove that the Plaintiff is exempt or not

1  exempt.  There's just three prongs and the exempts are limited to the Fair Labor
2  Standards Act.
3  Then just one correction that I wanted to make about the starting date for the
4  unjust enrichment.
5  THE COURT: Okay.
6  MS. GUSFA: In our supplemental briefing we had said that it begins on
7  January 9th.  That was based on the fact --
8  THE COURT:  -- Of 2009.
9  MS. GUSFA: Yes, thank you.  That was because leading up to that
10 point right before that, the paycheck that's right before January 9th of 2009 she was
11 getting some sort of overtime pay.  It's very clear where it says she's paid for 83
12 hours, and so just for the sake of accuracy we noticed that in the other taxable income
13 column she appeared to be getting something.  Now I recollect at Mr. DeKroub's
14 deposition he said that was for transportation, but just to be very cautious, we
15 premised our unjust enrichment argument on the idea that she was receiving nothing
16 as of January 9th.  But just to be careful -- we don't know what the other taxable
17 income was or wasn't, but just to be careful we just want to say that the start date was
18 actually February 19th.  I presume the Defendant shouldn't -- I'm sorry -- February
19 6th.  So it's February 6th to February 19th is the paycheck I'm looking at.  It's Bates
20 label Plaintiff's Exhibit 23.  It shouldn't be an issue I'm imagining because that's one
21 less month of damages for the Defendant.  Again, we don't know what was being paid
22 for in the other taxable income, but that's just out of an abundance of caution.  I
23 wanted to bring that to the Court's attention.
24 THE COURT: All right.  Well then, that -- we will proceed assuming that
25 the unjust enrichment claim begins February 6th, 2009.

1           MS. GUSFA: Right.

2           THE COURT: Okay. Now I believe there was one other issue about --

3  but I may -- that Defendant did not want -- wanted to be able to present evidence. Let

4  me just look back at your brief -- that Plaintiff was responsible for payroll.

5           MR. PILCHAK: Your Honor, given the Court's ruling on the --

6           THE COURT:  (Interjecting)  Okay, that goes away.

7           MR. PILCHAK:  -- On the Statute of Limitations issue that you've now --

8  are now within the Statute of Limitations, I'm just going to withdraw that.

9           MR. PILCHAK: Yes.

10          THE COURT: Yeah, I understand. Okay. So what I'll do is just enter a

11 one paragraph Order that says for the reasons set forth on the record, the motion was

12 granted in part and denied in part and we will all know which parts and if we need to

13 know more, Janice Coleman took it all down, but we can also consult as we go along.

14          And with respect to the termination issue, neither side should reference that in

15 opening, so -- because at this point it's not relevant to whether she was paid as a

16 salary -- salaried employee or denied overtime and all these issues. It may potentially

17 come up as relevant at a later point. It seems doubtful that it will be probative

18 evidence of anything that's in this case, so please don't mention it in your opening and

19 I think that's it. Are there any other issues?

20          MR. FARRAR: Yes, Your Honor, just one other issue I just wanted to

21 clarify and this goes back to the unjust enrichment piece. In Your Honor's Order it

22 was determined that the period in which Plaintiff could potentially recover for unjust

23 enrichment was from that early 2009 date up until October, 2011 which is when the

24 period begins for the FLSA damages. Certainly the Plaintiff is aware she can't get a

25 double recovery, she can't get double damages. However, if there were -- if the Jury

1  were to find that there was no FLSA violation, but that there was an unjust -- that they
2  do find for Plaintiff unjust enrichment, it seems under that circumstance Plaintiff
3  should be allowed to recover beyond October, 2011 as long as they are not awarding
4  damages for both FLSA and unjust enrichment.
5            MR. PILCHAK: I guess my question is if my client followed the Fair
6  Labor Standards Act and paid her as a salaried person, how could she be unjustly
7  enriched?
8            THE COURT: How could she be unjustly enriched?  You're just saying
9  she should have had a raise.  Is that what you're saying at that point?  If the Jury finds
10 that she was a salaried employee, that she was an exempt employee, are you just
11 saying that her salary was not enough?
12           MS. GUSFA: Is it possible to just -- I think the issue is more if the Jury
13 finds that there is an FLSA violation, but it's not willful, that would extend it one year.  I
14 think that's what --
15           MR. FARRAR:  Right.  Thank you.  I should --
16           THE COURT:  (Interjecting)  Oh, I thought you said the Jury says no
17 FLSA.
18           MR. FARRAR:  No.
19           MS. GUSFA: I think that was an error.
20           MR. FARRAR:  Right.  So that if the willful period begins October, 2011,
21 if there was violation but it was not willful, then the damages would go to 2012.  Now
22 maybe for simplicity it's just easier to make that the cut-off.  We wanted to just bring
23 that to the Court's attention because while there can't be an overlap, there may -- the
24 period may be a little bit different.
25           THE COURT: Why are you saying -- 2011 starts the Fair Labor

1  Standards Statute of Limitations.
2          MS. GUSFA: Only if we prove wilfulness.
3          THE COURT: I see, okay.  So you're saying no wilfulness we go to
4  2012, but she has a legal remedy during that time.  I'll give that some thought, but that
5  will go to the verdict form, but you're starting to worry me about the unjust enrichment
6  altogether.  So let me do some thinking about this and if I reconsider on the unjust
7  enrichment, I'm going to get back with you, but she has a legal remedy and just the
8  fact that she doesn't prevail on the wilfulness doesn't mean that it's not there.  It just
9  means she didn't prevail on that, so let's conclude.
10          Is there anything else before we convene on the 19th at 8:30 a.m?
11         MR. PILCHAK: No, Your Honor.
12         THE COURT: Okay.  Thank you all for your time this afternoon, and I
13  know it will be a busy time between now and then I wish you the best.
14         MS. GUSFA: Thank you.
15         THE CLERK OF THE COURT: All rise.  Court is adjourned.
16         **(Proceedings adjourned at about 5:07 p.m.)**
17                          - - -
18              **COURT REPORTER'S CERTIFICATION**
19
20
21  STATE OF MICHIGAN)
22               )  SS.
23  COUNTY OF WAYNE  )
24
25      I, Janice Coleman, Federal Official Court Reporter, in and

1  for the United States District Court for the Eastern District
2  of Michigan, do hereby certify that pursuant to Section 753,
3  Title 28, United States Code, that the foregoing is a true and
4  correct transcript of the stenographically reported proceedings
5  held in this matter and that the transcript page format is in
6  conformance with the regulations of the Judicial Conference of
7  the United States.
8
9                       /S/ JANICE COLEMAN
10                      JANICE COLEMAN, CSR NO. 1095, RPR
11                      FEDERAL OFFICIAL COURT REPORTER
12
13 DATED:  April 20, 2016